**Amendment by Plaintiff – To Join Additional Party Defendants**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

REV. ELLIS SMITH JR. /
LOVE OF CHRIST CHURCH

COMPLAINT NO. 05-2080 (JLL)

Vs.
TOWNSHIP OF UNION NEW JERSEY/
Frank Bradley, Administrator
Richard Malanda, Zoning supervisor
Art Remeers, Zoning Official
Judge Peter Brogan, Municipal Court
Daniel Antonelli, Township Attorney
Daniel McCarthy, Township Attorney
Drew Bauman, Township Prosecutor
ST. JOSEPH'S POLISH NATIONAL CATHOLIC CHURCH
Michael Mietlicki, Secretary
Kenneth Matz, Board Of Trustees Chairman
Lisa Fittipaldi, Attorney

RECEIVED-CLERK
U.S. DISTRICT COURT
2005 MAY 12 A 11:45

Rev. Ellis Smith Jr. moves the Court for an order permitting it to make St. Joseph's Polish National Catholic Church, Michael Mietlicki, Kenneth Matz and Lisa Fittipaldi parties defendant in the original complaint requesting a Trial by Jury and the scheduled Order To Show Cause hearing for the preliminary injunction scheduled for May 18, 2005 at 11:00 AM; directing that proper process be issued and served upon each of the persons; and permitting and requiring plaintiff to serve and file summons and amended complaint to that end, and as grounds for the motion, shows the court as follows:

1. This is an action based upon a wrongful interference with and injury to the black citizens of Love Of Christ Church, contributing to racial discrimination, denial of civil rights and unwarranted malicious prosecution by the Union Township Municipal Government.
2. The proposed additional defendants, Michael Mietlicki, Kenneth Matz and Lisa Fittipaldi joined in the execution of and participated in furthering the objects of the conspiracy by bringing about the denial of vehicular access to the Love Of Christ Church and thereby denying reasonable access for congregants, especially the elderly and handicapped.
3. The proposed additional defendants, Michael Mietlicki, Kenneth Matz and Lisa Fittipaldi was participant in furthering the objects of conspiracy by formation and distribution of documents to the defendants and assisting in the persecution of the Love of Christ Church

4. The proposed additional defendants, Michael Mietlicki, Kenneth Matz and Lisa Fittipaldi was participant in furthering the objects of conspiracy by the orchestration of incident hindering the Worship Service of Love Of Christ Church on Sunday, April, 27, 2005, involving the Union Township Police department and devising of the subsequent police report.
5. Each of the proposed additional defendants is a citizen of the United States and resides in the State of New Jersey, and each can be made a party defendant without depriving this Court of jurisdiction.
6. At the time of filing the original complaint in this cause, plaintiff was not fully informed with respect to the activities of these additional defendants and has become informed of this following extensive investigation.

**Enclosed supporting documents:**

**<u>Contract For Sale:</u>**
#13 the Buyer intends to use the property as a church. The Seller states this use does not violate any applicable zoning ordinances building code or other law. The seller will obtain and pay for "Certificate of Occupancy."
#15 the Seller states that all buildings, **<u>driveways</u>** and other improvements on the property are within its boundary lines.
These clauses substantiate an easement for vehicular access by necessity.

**<u>Union Township Zoning Codes</u>**
170-136.21. Certificate of continued occupancy
A. The Construction Code Official shall not issue such certificate unless he determines, after inspection, that there are no violations of any applicable laws, ordinances
170-138. Churches and public and private schools teaching academic subjects.
D. Off-street parking shall be provided in accordance with 170-239 (1 for each 3 seats)

**<u>Property purchase proposal form</u>**
Page 5 lists the ministries of Love Of Christ Church. Seller was well aware of need for vehicular access.

**<u>Letter dated March 26, 2004</u>**
This letter verifies that Michael Mietlicki had promised and committed St. Joseph's to subsequently sell 1601 Andrew St. to the Love Of Christ Church (see point #1)
Michael Mietlicki solicited the statement listed in point #2. He said he needed a request for temporary easement for the board members. The sentence of proposed entrance from Stanley Terrance was made in naivety of the procedural complexity, expense and time frame of this type of project.

**<u>Anco Environmental Civil suit</u>**
This document proves that Love Of Christ Church never contracted Anco to install crushed stone on our property. Leaving this stone in place was obviously less expensive for Anco. In premonition that the way this stone was installed would eventually cause

problems for Love Of Christ Church, this suit was filed to coordinate original surface restoration.

**Photographs of cars**
These cars belong to members of St. Joseph's Polish National Catholic Church and are registered to the 1601 Andrew St. Address.

**Letter dated February 24, 2005**
Notice the last sentences of this letter to stop immediately and top of page fax annotation from defendant Daniel Attonelli's law firm. The clever devising of this letter and the distribution to Union Township attorneys portrays convincing conspiracy.

**Letter dated May 5, 2005**
This documents exhibits that all efforts to communicate and negotiate with the defendants have been diligently exhausted by the plaintiffs.

Respectfully submitted

Rev. Ellis Smith Jr.
May 12, 2005

CC:
Frank Bradley, Union Township (Hand Delivery and 1st Class Mail)
Richard Malanda, Union Township (Hand Delivery and 1st Class Mail
Art Reimers, Union Township (Hand Delivery and 1st Class Mail)
Judge Peter Brogan, Union Township (Hand Delivery and 1st Class Mail)
Daniel Antonelli, Union Township (Hand Delivery and 1st Class Mail
Daniel McCarthy, Union Township (Hand Delivery and 1st Class Mail)
Drew Bauman, Union Township (Hand Delivery and 1st Class Mail)
Michael Mietlicki, St. Joseph's (Hand Delivery and Certified Mail)
Kenneth Matz, St. Joseph's (Hand Delivery and Certified Mail)
Lisa Fittipaldi, St. Joseph's (Facsimile and Certified Mail)
Brian Hak, Union Township (Facsimile and Certified Mail)

# CONTRACT FOR SALE OF REAL ESTATE

This Contract for Sale is made on December 1, 2003
BETWEEN

ST. JOSEPH'S POLISH NATIONAL CATHOLIC CHURCH, INC., or its successor in interest,

whose address is 1601 Andrew Street, Union, NJ

referred to as the "Seller,"
AND

LOVE OF CHRIST CHURCH

whose address is 115 Evergreen Place, P.O. Box 2383, East Orange, NJ 07019

referred to as the "Buyer."
The words "Buyer" and "Seller" include all Buyers and all Sellers listed above.

1. **Purchase Agreement.** The Seller agrees to sell and the Buyer agrees to buy the Property described in this contract.

2. **Property.** The property (called the "Property") to be sold consists of: (a) the land and all the buildings, other improvements and fixtures on the land; (b) all of the Seller's rights relating to the land; and (c) all personal property specifically included in this contract. The Real Property to be sold is commonly known as 1608 Porter Road in the Township of Union in the County of Union and State of New Jersey. It is shown on the municipal tax map as lot 14 in block 6811.

3. **Purchase Price.** The purchase price is $ 400,000.00

4. **Payment of Purchase Price.** The Buyer will pay the purchase price as follows:

| | |
|---|---|
| Previously paid by the Buyer (initial deposit) | $ N/A |
| Upon signing of this Contract (balance of deposit) | $ 50,000.00 |
| Amount of mortgage (paragraph 6) | $ NONE |
| By assuming the obligation to pay the present mortgage according to its terms. This mortgage shall be in good standing at the closing. Either party may cancel this contract if the Lender does not permit the Buyer to assume the mortgage (estimated balance due). | $ N/A |
| By the Seller taking back a note and mortgage for years at % interest with monthly payments based on a year payment schedule. The Buyer will pay the Seller's attorney $ for the preparation of the necessary documents. The Buyer will also pay all recording costs and provide the Seller with an adequate Affidavit of Title. | $ N/A |
| Balance to be paid at closing of title, in cash or by certified or bank cashier's check or attorney's trust account check. (subject to adjustment at closing) | $ 350,000.00 |

5. **Deposit moneys.** All deposit moneys will be held in trust by Dean T. Bennett, Esq., Counsel and Escrowee for the Seller in a non-interest bearing trust account until closing of title, at which time all monies shall be paid over to the Seller. The monies shall not be paid over to the Seller prior to the closing of title, unless agreed in writing by both the Buyer and Seller. In the event the Buyer and Seller cannot agree on the disbursement of these escrow monies, the Escrowee may place the deposit monies in Court requesting the Court to resolve the dispute.

7. **Time and Place of Closing.** The closing date cannot be made final at this time. The Buyer and Seller agree to make December 31, 2003 the estimated date for the closing. Both parties will fully cooperate so the closing can take place on or before the estimated date. The closing will be held at the office of counsel for the Buyer.

8. **Transfer of Ownership.** At the closing, the Seller will transfer ownership of the Property to the Buyer. The Seller will give the Buyer a properly executed deed and an adequate affidavit of title. If the Seller is a corporation, it will also deliver a corporate resolution authorizing the sale.

9. **Type of Deed.** A deed is a written document used to transfer ownership of property. In this sale, the Seller agrees to provide and the Buyer agrees to accept a deed known as bargain and sale with covenants against grantors' acts.

10. **Personal Property and Fixtures.** Many items of property become so attached to a building or other real Property that they become a part of it. These items are called fixtures. They include such items as fireplaces, patios and built-in shelving. All fixtures or any appliances included in this sale are being sold to Buyer in "AS IS" condition. All fixtures are included in this sale except for the following fixtures or other items of property which are specifically excluded:

a. Eight stained glass side windows. In view of the fact that it will be difficult to have these windows removed and replaced prior to closing, the Buyer and Seller agree that the Seller may arrange for the removal of these windows within three (3) months of closing of title. The installation of replacement windows will be the sole responsibility of Buyer. The Seller shall give Buyer a credit of $1200.00 for the installation of replacement windows and any additional cost with respect thereto shall be the sole responsibility of Buyer.

b. The altar Trinity stained glass window.

c. The angels on the altars.

d. The eternal light.

e. The pew name plates.

f. The Holy Water Font.

g. The free standing Altar.

h. The freezer and mixer.

i. The granite Memorial in the yard.

j. The votive stands.

k. The wall Memorials.

l. The Carillon Bell System (speakers and receiver)

m. The organ.

n. The two light colored non-matching pews located in the foyer.

11. **Physical Condition of the Property.** This Property is being sold "As is." The Seller does not make any claims or promises about the condition or value of any of the Property included in this sale. The Buyer has inspected the Property and relies on this inspection and any rights which may be provided for elsewhere in this contract. The Seller agrees to maintain the grounds, buildings and improvements subject to ordinary wear and tear. Seller agrees to leave the Property in broom clean condition, free of debris.

12. **Inspection of the Property.** The Seller agrees to permit the Buyer to inspect the Property at any reasonable time before the closing. The Seller will permit access for all inspections provided for in this contract.

13. **Building and Zoning Laws.** The Buyer intends to use the Property as a church. The Seller states that this use does not violate any applicable zoning ordinances building code or other law. The Seller will obtain and pay for all inspections required by law. This includes any municipal "Certificate of Occupancy." If the Seller fails to correct any violations of law, at the Seller's own expense, the Buyer may cancel this contract; provided, however, if the cost to correct any such violations shall exceed five (5%) of the contract price, the Seller may cancel this contract.

14. **Flood Area.** The federal and state governments have designated certain areas as "flood areas." This means they are more likely to have floods than other areas. If this Property is in a "flood area" the Buyer may cancel this contract within 10 days of the signing of the contract by all parties.

15. **Property Lines.** The Seller states that all buildings, driveways and other improvements on the Property are within its boundary lines. Also, no improvements on adjoining properties extend across the boundary lines of this Property.

16. **Ownership.** The Seller agrees to transfer and the Buyer agrees to accept ownership of the Property free of all claims and rights of others, except for:

- a. the rights of utility companies to maintain pipes, poles, cables and wires over, on and under the street, the part of the Property next to the street or running to any house or other improvement on the Property;
- b. recorded agreements which limit the use of the Property, unless the agreements: (1) are presently violated; (2) provide that the Property would be forfeited if they were violated, or (3) unreasonably limit the normal use of the Property; and
- c. all items included in Schedule A as part of the description of the Property.

In addition to the above, the ownership of the Buyer must be insurable at regular rates by any title insurance company authorized to do business in New Jersey subject only to the above exception.

17. **Correcting Defects.** If the Property does not comply with paragraphs 15 or 16 of this contract, the Seller will be notified and given 30 days to make it comply. If the Property still does not comply after that date, the Buyer or Seller may cancel this contract or the Buyer and Seller may agree to give the Seller more time to comply.

18. **Inspection of Property by Buyers:**

- a. **Kind of Inspections.** The Buyer may have the Property inspected by a inspection service or by a construction expert at the Buyer's expense. The inspection may include the structural and mechanical condition of the Property, the presence of Radon gas, along with an inspection of the plumbing, heating, cooling and electrical systems. The Buyer may also inspect the septic or other sewerage disposal system and test the well, water system and the quality of the water. The Buyer may also make an inspection to determine if the Property is free of any damage or infestation caused by termites, dry rot, fungi, wood destroying insects and other pests or organisms or other pests.
- b. **Time and Access for Inspections.** All inspections must be completed and Seller notified of the results within 15 days of the date of this contract is agreed to by all parties. The Seller agrees to provide the Buyer with reasonable access to make all of the inspections provided for in this contract.
- c. **Results of Inspections and Remedies.** If the inspections reveal any serious defects and the parties do not agree on what corrective actions or repairs are to be made by the Seller, either party may cancel this contract.

**Lead Paint Sale Contingency.** This contract is contingent upon a risk assessment or inspection of the Property for the presence of lead based paint and/or lead based paint hazards at the Buyer's expense until 9 p.m. on the tenth calendar-day after the signing of this contract by all parties for housing built before 1978. [Intact lead based paint that is in good condition is not necessarily a hazard. See the EPA pamphlet "Protect Your Family from Lead in Your Home" for more information.] This contingency will terminate at the above predetermined deadline unless the Buyer (or Buyer's agent) delivers to the Seller (or Seller's agent) a written contract addendum listing the specific existing deficiencies and corrections needed, together with a copy of the inspection and/or risk assessment report. The Seller may, at the Seller's option, with five(5) days after delivery of the addendum, elect in writing whether to correct the conditions(s) prior to settlement. If the Seller will correct the condition, the Seller shall furnish the Buyer with certification from a risk assessor or inspector demonstrating that the condition has been remedied before the date of the settlement. If the Seller does not elect to make the repairs, or if the Seller makes a counter offer, the Buyer shall have five(5) days to respond to the counter-offer or remove this contingency and take the Property in "as is" condition or this contract shall become void. The Buyer may remove this contingency at any time without cause. (42 U.S.C. 4852d) (61FR 9064)

19. **Risk of Loss.** The Seller is responsible for any damage to the Property, except for normal wear and tear, until the closing. If there is damage, the Buyer can proceed with the closing and either:

- a. require that the Seller repair the damage before the closing, or
- b. deduct from the purchase price a fair and reasonable estimate of the cost to repair the Property.

In addition, the Seller may cancel this contract if the cost of repair is more than five (5%) of the purchase price.

20. **Cancellation of Contract.** If this contract is legally and rightfully canceled, the Buyer can get back the deposit and the parties will be free of liability to each other.

21. **Assessments for Municipal Improvements.** Certain municipal improvements such as sidewalks and sewers may result in the municipality charging Property owners to pay for the improvement. All unpaid charges (assessments) against the Property for work completed before the closing will be paid by the Seller at or before the closing. If the improvement is not completed before the closing, then only the Buyer will be responsible. If the improvement is completed, but the amount of the charge (assessment) is not determined, the Seller will pay an estimated amount at the closing. When the amount of the charge is finally determined, the Seller will pay any deficiency to the Buyer (if the estimate proves to have been too low), or the Buyer will return any excess to the Seller (if the estimate proves to have been too high).

22. **Adjustments at Closing.** The Buyer and Seller agree to adjust the following expenses as of the closing date: rents, municipal water charges, sewer charges, taxes, interest on any mortgage to be assumed and insurance premiums. If the Property is heated by fuel oil, the Buyer will buy the fuel oil in the tank at the closing date. The price will be the current price at that time as calculated by the supplier. The Buyer or the Seller may require that any person with a claim or right affecting the Property be paid off from the proceeds of this sale.

23. **Possession.** At the closing the Buyer will be given possession of the Property. No tenant will have any right to the Property unless otherwise agreed to in this Contract.

24. **Complete Agreement.** This Contract is the entire and only agreement between the Buyer and the Seller. This contract replaces and cancels any previous agreements between the Buyer and Seller. This contract can only be changed by an agreement in writing signed by both Buyer and Seller. The Seller states that the Seller has not made any other contract to sell the Property to anyone else.

25. **Parties Liable.** This Contract is binding upon all parties who sign it and all who succeed to their rights and responsibilities.

26. **Notices.** All notices under this Contract must be in writing. The notices must be delivered personally or mailed by certified mail, return receipt requested, to the other party at the address written in this contract, or to that party's attorney.

27. **No Realtor's Commission.** Both the Buyer and Seller agree and acknowledge that no Realtor was involved or engaged with regard to this transaction and that no commission shall be earned or paid.

28. **Attorney Review Clause.**

(1) **Study by Attorney**

The Buyer or the Seller may choose to have an attorney study this Contract. If an attorney is consulted, the attorney must complete his or her review of the Contact within a three-day period. This Contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of the Contract.

(2) **Counting the Time**

You count the three days from the date of delivery of the signed Contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and the Seller may agree in writing to extend the three-day period for attorney review.

(3) **Notice of Disapproval**

If any attorney for the Buyer or the Seller reviews and disapproves of this Contract, the attorney must notify the other party named in this Contract within the three-day period. Otherwise this Contract will be legally binding as written. The attorney must send the notice of disapproval to the other party by certified mail, by telegram, or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the recipient.

29. **Buyer Financially Able to Close.** The Buyer represents that Buyer has sufficient cash available to complete this purchase.

30. **No Assignment.** This Agreement shall not be assigned without the written consent of the Seller. This means that the Buyer may not transfer to anyone else its rights under this Agreement to buy the Property.

**SIGNED AND AGREED TO BY:**

Witnessed or Attested by: Date Signed:



#738732 v1
034355-19023

30. **No Assignment.** This Agreement shall not be assigned without the written consent of the Seller. This means that the Buyer may not transfer to anyone else its rights under this Agreement to buy the Property.

**SIGNED AND AGREED TO BY:**

Love of Christ Church - Pastor

| Witnessed or Attested by: | Date Signed: | |
|---|---|---|
| | 12/1/03 | [signature] BUYER - Administrator |
| [signature] As to Buyer(s) | 10/1/03 | [signature] BUYER |
| | | |
| | | ST. JOSEPH'S POLISH NATIONAL CATHOLIC CHURCH |
| [signature] As to Seller(s) | 12/1/03 | By: [signature], CHAIRMAN SELLER |
| | | |



[illegible] v1

DEC. 17. 2003 2:37PM Bilheimer&Raquet (973) 335-5357 NO. 6800 P. 7

garage, and garages for the same building in the RA and RB Zones shall be contiguous. In addition, the following conditions for driveways and parking shall be met:

A. No driveway or parking area shall be located in the minimum required side yard or rear yard setback.

B. All parking shall take place in driveways and designated parking areas. Sidewalks serving one- and two-family dwellings shall not be used for parking.

C. All driveways or aprons shall be constructed of concrete or bituminous concrete.

D. The maximum width for any driveway shall be as follows: **[Amended 1-26-1999 by Ord. No. 4575]**

(1) Garage, one-car: 12 feet.

(2) Garage, one-car, with allowance for additional off-street parking not in front of main structures: 18 feet.

(3) Garage, two-car: 24 feet.

E. A driveway shall have a minimum length of 22 feet.

F. Whenever possible, apron cuts for driveways on opposite sides of a street shall have a center-line offset of at least 25 feet.

G. The maximum gradient for driveways shall be no more than 7% (a seven-foot rise in 100 feet), with a near-level area from 12 to 16 feet long in front of the garage it services.

**§ 170-136.2. Occupancy limitations. [Added 3-10-1992 by Ord. No. 4181]**

A. No dwelling unit shall be occupied by more than one person for the first 100 square feet of floor space, exclusive of kitchens, baths and basements, plus 75 square feet of floor space for each additional occupant. See §§ 170-131 and 170-132.[44]

**§ 170-136.2.1. Certificate of continued occupancy. [Added 10-8-2002 by Ord. No. 4754]**

A. No building or structure shall be occupied or used in whole or part unless and until a certificate of continued occupancy has been issued by the Construction Code Official of the Township of Union. The Construction Code Official shall not issue such certificate unless he determines, after inspection, that there are no violations of any applicable laws, ordinances or orders pending at the time of issuing the certificate. The certificate shall be issued upon written request from the owner or his authorized agent.

B. A certificate of continued occupancy shall be applied for and obtained prior to the use or occupancy of the whole or any part of any building undergoing a change in ownership; undergoing a change of occupancy, except that this provision shall not apply to a change

---

44. **Editor's Note: Former Subsection B, Continued occupancy, added 12-8-1992 by Ord. No. 4225, which immediately followed this subsection, was repealed 10-8-2002 by Ord. No. 4754. See now § 170-136.2.1, Certificate of continued occupancy.**

in the occupancy of less than the whole number of dwelling units contained within a building containing more than one dwelling unit when the change of occupancy of such dwelling unit or units occurs within 90 days of the issuance of a prior certificate of continued occupancy for such unit or units. Upon receiving an application for a certificate of continued occupancy, the Construction Code Official or his authorized representative shall make an inspection of the building or part thereof for which the certificate is requested and shall forthwith issue the certificate of continued occupancy if the use and occupancy thereof shall be in conformity with the Code of the Township of Union or other applicable ordinances of the Township and if the building is safe and does not constitute a nuisance or hazard likely to result in injuries to persons or damages to property; in case the Construction Code Official shall decline to issue a certificate of continued occupancy, his reasons for doing so shall be stated to the applicant, and a written statement thereof shall be transmitted to the applicant on request.

C. A certificate of continued occupancy shall be issued to any person having a proprietary or tenancy interest who shall be held responsible for any violations on the premises. A record of all certificates shall be kept on file by the Construction Code Official.

D. A fee of $50 shall be charged and paid to the Township for each original certificate of continued occupancy.

E. Any owner-occupant of a building, structure or premises, or any architect, builder, contractor, agent or other person employed in connection therewith, who violates this section or assists in the commission of such violation shall be subject to the penalty set forth in § 170-249.

F. A temporary certificate of continued occupancy may be issued, if, in the opinion of the Construction Code Official, a time period is needed to conform to the requirements as set forth in the inspection of said structure or dwelling. The temporary certificate of continued occupancy may be issued by the Construction Code Official for a period of not less than 30 days nor more than 120 days.

G. If a person, firm, corporation or entity wishes to assume the obligations of the responsibility to comply with this chapter, said person, firm, corporation or entity shall sign a document, on a form to be prepared by the Construction Code Official, with the list of deficiencies attached. Said person, firm, corporation or entity can be issued a temporary certificate of continued occupancy in accordance with this section, Subsection F.

H. In the event any person, firm, corporation or entity fails to conform within the time frame set forth in this section when a temporary certificate of continued occupancy is issued, they will be subject to the penalties set forth in § 170-249.[45]

45. Editor's Note: Former Subsection I, which contained a penalty for violation of § 170-136.2.1, which previously followed this subsection, was deleted at time of adoption of Code (see Ch. 1, General Provisions, Art. I). See now § 170-249, Violations and penalties.

(3) Lots. Lots shall also be oriented as to permit buildings to be constructed thereon to maximize solar gain. Where possible, the long access of a lot shall run in a north-south direction.

(4) Topography. The development shall take advantage of topographic features to maximize solar gain and afford protection from winter winds. Where possible, development shall be oriented to southerly slopes.

(5) Vegetation. Maximum use shall be made of natural vegetation which will afford protection from winter winds and provide shading in summer.

P. Monuments. The subdivider shall install monuments in accordance with the requirements of the provisions of Section 3 of the Map Filing Law (1960), Chapter 141 of the Laws of 1960, N.J.S.A. 46:23-9.11.

**§ 170-239. Site plans; on-site improvements; parking requirements.**

Prior to the granting of final approval, the applicant shall have installed or furnished performance guaranties, as set forth in § 170-243, for the ultimate installation of any required improvements, as the same are described in § 170-238. In addition, the Planning Board may require the installation of on-site improvements, as described below, prior to the granting of final approval and which it finds essential before the issuance of a construction permit and may require the furnishing of performance guaranties to insure completion of remaining improvements. All such improvements shall be subject to the approval and inspection of the Township Engineer. Site plans shall comply to requirements and the principles of design specified in § 170-238, Subdivisions, as determined to be applicable by the Township Engineer.

A. Parking spaces required. Except as otherwise provided in this chapter, for all new buildings or uses or additions to existing buildings or uses in all zone districts other than the UCBD Union Center Business District within the area designated as a Special Improvement District in accordance with Chapter 471, Special Improvement Districts, there shall be provided the number of parking spaces required by the specific use as prescribed in the following schedule: **[Amended 3-10-1992 by Ord. No. 4181; 1-26-1999 by Ord. No. 4575]**

| Type of Use[1] | Required Parking Spaces[2] |
|---|---|
| Assembly halls, community buildings, private membership clubs, lodges | 1 for each 100 square feet of gross floor area |
| Banks | 1 for each 200 square feet of gross floor area |
| Bowling alleys | 4 for each lane |
| Buildings for tennis, squash, racquetball, etc. | 4 for each court |
| Churches, auditoriums, theaters, arenas, etc. | 1 for each 3 seats[3] |

**[...] Animal hospitals. [Added 3-28-1995 by Ord. No. 4380]**

[...]ls, where permitted, shall comply with the following regulations:

A. [...] medical services shall be provided under the direct supervision of a New [...]nsed Doctor of Veterinary Medicine.

B. [...] of animals may take place in not more than 30% of the gross floor area.

C. [...] of any facility shall be not less than 200 feet from any residential district.

## ARTICLE XV
## Conditional Uses

**§ 1[...] Power to grant; application; requirements.**

Pu[...] L. 1975, c. 291,[46] the Planning Board may grant conditional uses wherever he[...]mitted in this Part 3. Application for a conditional use shall be made in acc[...] the procedures set forth in Part 4 for preliminary site plan approval, and the Pl[...] shall act on the application in accordance with said procedures for preliminary site [...]val. Application for a conditional use shall be granted if the same will not be det[...] the health, safety and general welfare of the community, is not likely to involve un[...] traffic safety or traffic congestion and is reasonably necessary for the con[...] the community. Requirements for conditional uses provided for in this chapter shal[...]ows.

**§ 17[...] Churches and public and private schools teaching academic subjects.**

A. [...]ng shall exceed the height limit of its zone district except as provided in

B. [...] be minimum lot area of two acres measured within 450 feet of the front street [...]y.

C. [...]gs shall be located at least 50 feet from a street property line, at least 25 feet f[...] property line and 50 feet from a rear property line.

D. O[...] parking shall be provided in accordance with § 170-239. All parking areas and d[...] shall be located at least 10 feet from a street, building or property line.

E. The[...] be a minimum distance between buildings of 25 feet, but not less than the he[...] the taller building.

**§ 170-1[...] Home professional offices.**

A. Th[...]perty shall meet the minimum lot size requirement of the zone district.

46. Edit[...] N.J.S.A. 40:55D-1 et seq.

**Property Purchase Proposal From:**

# LOVE OF CHRIST CHURCH

*"And to know the love of Christ, which passeth knowledge, that ye might be filled with all the fullness of God"*
EPHESIANS 3:19

**SUNDAY MORNING WORSHIP - 11:00AM**
**SUNDAY MORNING BIBLE CLASS - 9:30AM**
**WEDNESDAY BIBLE STUDY - 7:00PM**

115 EVERGREEN PL.
EAST ORANGE, NJ 07019
(973)673-4500
PASTOR ELLIS SMITH JR.

**LOVE OF CHRIST CHURCH**

115 EVERGREEN PL.
P.O. BOX 2363
EAST ORANGE, NJ 07019
(973) 673-4500

10/21/02

Re: Saint Joseph's Parish
1608 Porter Rd.
Union, NJ 07083

Dear Merger Committee:

I would like to take this opportunity to thank you for allowing us to submit this proposal regarding purchase of the above said property. As mentioned in the previous meeting with Rev. Jan and Mr. Mietlicki, I inquired about purchasing this property 2 1/2 years ago and we are sincerely interested. We are presently renting a temporary facility with total costs exceeding two thousand dollars per month. If you accept this proposal we would look forward to closing and completing this deal expeditiously. We already have several major corporate sponsors to make verbal pledges to our Property Acquisition Fund. Please be advised that we are not asking St. Joseph's Parish for any financing, as we have our own sources. Also, I would like to emphasize that the property will remain as a house of worship. A brief description of our church has been enclosed for your convenience.
I look forward to meeting you all soon and may God bless you abundantly.

In God's Service,

Rev. Ellis Smith Jr.

# PROPOSAL FOR PROPERTY PURCHASE

**<u>Buyer:</u> Love Of Christ Church**
**115 Evergreen Pl.**
**P.O. Box 2363**
**East Orange, NJ 07019**

**<u>Seller:</u> Saint Joseph's Parish**

**<u>Property:</u> 16[illegible]8 Porter Rd.**
**Union, NJ 07083**

**<u>Purchase Price</u> = $400,000.00**

**<u>Down Payment</u> = $50,000.00 - will be rendered to Sellers on or before November 25, 2003**

**<u>Closing Date</u> = June 1, 2004 or no later than December 31, 2004**

**<u>Stipulations:</u>**
**-Buyers will assume occupancy for worship services on December 1, 2003 and begin paying all utilities**
**-Buyers will pay the Sellers the sum of $1000.00 per month until Closing**
**-All monies paid directly to Sellers will be deducted from purchase price at Closing**
**-Buyers are aware the Sellers will be taking previously submitted list of memorials**
**-No alterations will be made to the interior or exterior of the property by the Buyers prior to Closing without the Sellers written consent**

**Respectfully Submitted on 10/21/03**

**Rev. Ellis Smith Jr. - Pastor**

**Sis. Patricia Clyde - Administrator**

**LOVE OF CHRIST**
**CHURCH**
Rev. Ellis Smith Jr. - Pastor

We are striving to produce mature disciples of Jesus Christ, not merely add to our membership role. We always keep in mind that no matter how large our congregation becomes, we must maintain a family atmosphere and foster relationships of understanding and mutual respect.

**THE MINISTRY / MISSION**

Love of Christ Ministry's primary focus is to lead lost soul's to Christ, and to nourish and lead his followers with The Word Of God. By teaching, preaching, prayer and leading Holy lives, we endeavor to help people to achieve their divine purpose and destiny in the Kingdom of God. We endeavor to be a "safe and comforting haven" to those who are looking for a shelter from the storms of life. We indeed are a ministry of love, healing and compassion, and thus, Jesus Christ is at the center of all we do.

We welcome all people without regard to race, skin color, ethnic group, handicap or denominational affiliation.

*"Go ye therefore, and teach all nations, baptizing them in the name of the Father and of the Son and of the Holy Spirit; teaching them to observe all things whatsoever I have commanded you: and lo, I am with you always, even unto the end of the world."* Matt. 28:19,20

**WE BELIEVE**

- The Holy Bible is the inspired and only infallible word of God.
- There is one God, eternally existent in three persons, Father, Son and Holy Spirit.
- Water Baptism
- In the Blessed Hope, which is the rapture of the Church of God which is in Christ, at His return.
- The only means of being cleansed from sin is through repentance and faith in the precious blood of Jesus Christ.
- Regeneration by the Holy Spirit is essential for personal salvation.
- We believe that baptism in the Holy Spirit by whose indwelling the Christian is enabled to live a holy and separated life and be fruitful by doing His will.

# Love Of Christ Ministries

**~Missions Ministry (Sick, Homeless, Poor etc.)**

**~Senior Citizen Ministry**

**~Child Day Care Ministry**

**~Handicapped Children & Adult Ministry**

**~Abused Women & Children Ministry**

**~Prayer Ministry (Includes Telephone Prayer Line)**

**~Handicapped Children & Adult Ministry**

**~Audio / Radio & Video TV Ministry**

**~Economic Enterprise Ministry (Businesses, Stores, Investments etc.)**

**~Education Ministry (Advocacy, Scholarships, Tutoring etc.)**

**~Substance Abused Ministry**

**~Prison Ministry**

**~Bereavement Ministry**

**~Street Ministry**

**~Book / Christian Products Store**

**~Women's Ministry**

**~Men's Ministry**

**~Christian Drama Ministry**

**~Christian Praise Dance Ministry**







**LOVE OF CHRIST CHURCH**

1608 PORTER RD.
UNION, NJ 07083
(908) 810-8814

March 26, 2004

Dear Michael:

I would like to take this opportunity to thank everyone at St. Joseph's and Holy Trinity for their kindness and hospitality preceding the purchase of the property at 1608 Porter Rd. Our congregation was overwhelmed by your acts of love and consideration, and we are indeed sincerely grateful.
I would like to formally request the following two items be considered at your next board meeting:

(1) We would like to have permission to order and inspection of Rectory property at 1601 Andrew St. - for the purpose of submitting a bid (and if accepted, a downpayment) to enter into contract with you to purchase the property.

(2) We would like to have permission to temporarily pass through the Rectory property driveway for entry to the church on Sunday's only for elderly, handicapped members.
Please note: We are presently in the process of submitting a Civil Engineer design to the Union Township Planning Board for constructing a driveway entrance from Stanley Terrace. This process is expected to take approximately 2 months.

I look forward to hearing from you soon and may God bless you and strengthen you in every way.

In God's Service,

CC: Rev. Jan Kosc

[signature]

Rev. Ellis Smith Jr.

FORM 2.2

**SPECIAL CIVIL PART SUMMONS AND RETURN OF SERVICE -PAGE 2**

**Plaintiff or Plaintiff's Attorney Information:**
Name:
William J. Anastasio, Esq.
Address:
141 Butler Pkwy
Summit, NJ

Telephone No.: (908) 918 - 9800

Demand Amount: $ 10,000.00
Filing Fee: $
Service Fee: $
Attorney's Fees: $
TOTAL: $

RECEIVED/FILED
2004 MAY 24 P 3: 4
SUPERIOR COURT
UNION COUNTY

**SUPERIOR COURT OF NEW JERSEY**

**LAW DIVISION, SPECIAL CIVIL PART**

**Union COUNTY**
2 Broad St. - Special Civil Part
Elizabeth, NJ 07207
908-659-3637

Pastor Ellis Smith Jr.
1608 Porter Rd.
Union, NJ 07083
Plaintiff(s)

versus

Mark Annis &
Anco Environmental Services
350 Russo Pl.
Berkeley Heights, NJ 07922
Defendant(s)

Docket Number: UNN-LDC-7120-04
(to be provided by the court)

Civil Action

SUMMONS

(Circle one): Contract or Tort

**Defendant(s) Information: Name, Address & Phone**

Mark Annis &
Anco Environmental Services
350 Russo Pl.
Berkeley Heights, NJ 07922
(908) 464-9200

**Date Served:** ____________

**RETURN OF SERVICE IF SERVED BY COURT OFFICER** (For Court Use Only)

Docket Number: ____________ Date: ____________ Time: ____________
WM __ WF __ BM __ BF __ OTHER ____ HT __ WT ___ AGE ___ MUSTACHE ___ BEARD ___ GLASSES ___
NAME: ____________ RELATIONSHIP: ____________
Description of Premises ____________

I hereby certify the above to be true and accurate:

____________ Court Offic

**RETURN OF SERVICE IF SERVED BY MAIL** (For Court Use Only)

I, ____________, hereby certify that on ____________, I mailed a copy of the with summons and complaint by regular and certified mail-return receipt requested.

____________
Employee Signature

FORM A

**SPECIAL CIVIL COMPLAINT**

Pastor Ellis Smith Jr. ,Plaintiff(s)
(Your name) Love of Christ Church

1608 Porter Rd.
(Your Address)

Union , NJ 07083
(Zip Code)

(908) 964-4622
(Telephone Number)

vs.

Mark Annis ,Defendant(s)
(Person you are suing) Anco Environmental Co.

35 Russo Pl.
(address)

Berkeley Heights, NJ 07922
(Zip Code)

(908) 464-9700
(Telephone Number)

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, SPECIAL CIVIL PART

UNION COUNTY

Docket No. DC UNN - LDC-7120-04
[COURT USE ONLY]

CIVIL ACTION

**COMPLAINT**

Type or print the reasons you, the Plaintiff(s), are suing the Defendant(s): (See instruction B)

To restore church property ground to

it's original surface as grass.

(You may attach more sheets if you need to)

The amount you, the Plaintiff(s) are demanding from the Defendant(s) $ 10,000.00 plus interest and $ ______ for the costs of suing.

At the trial Plaintiff will need:
An interpreter: ☐ Yes ☑ No Indicate Language: ______
An accommodation for a disability: ☐ Yes ☑ No

I certify that the above matter in controversy is not the subject of any other court action or arbitration proceeding now pending or contemplated, and that no other parties should be joined in this action.

Dated: 5/24/04

[signature]
Your Signature

Ellis Smith Jr.
Name Typed or Printed











# The Polish National Catholic Church
## Of the Holy Trinity and Saint Joseph

*Rev. Jan Kosc*
***Pastor***

*Pastor's Residence:*
*1601 Andrew Street*
*Union, New Jersey 07083*
*908-688-4929*

February 24, 2005

Rev. Ellis Smith Jr.
Love of Christ Church
1608 Porter Road
Union, NJ. 07083

Dear Rev. Smith

At its February meeting our Board of Directors decided to take the necessary steps to sell our pastor's residence at 1601 Andrew Street. Since you had previously expressed an interest in the property we are taking this opportunity to make you aware of our plans. If we don't hear from you by the end of March we will move ahead with the necessary landscaping improvements and list the home with a realtor.

If you are interested,

- Please express your interest with a letter received no later than the end of March. You can also email me at Michael.mietlicki@mietlicki.org.
- In the letter, please indicate how you would finance the purchase. Unfortunately, we are not in a position to assume a mortgage.
- A walk through of the home can be arranged by contacting Father Kosc at the above phone number.
- If you do respond positively, we will move forward with a real estate appraisal to determine a selling price.

In the same manner, our Board has recently become aware of your deliberations with the Township of Union regarding parking. At this time we feel it necessary to confirm that we have not granted your congregation permission to drive through the Andrew Street property to gain access to your church's side yard. If you have taken that liberty we request that it stop immediately.

We look forward to your positive response regarding 1601 Andrew Street.

On the Board's behalf,

[signature]

Michael R. Mietlicki

Cc: Rt. Rev. Casimir Grotnik Phd
Rev. Jan Kosc
Mr. Kenneth E. Matz : Chairman

**407 Ziegler Avenue – Linden, New Jersey 07036**

**LOVE OF CHRIST CHURCH**
**1608 Porter Rd.**
**Union, NJ 07083**
**(908) 964-4622**

To: All Parishioners of The Polish National Catholic Church
Of the Holy Trinity and Saint Joseph

May 5, 2005

Dear Parishioners:

Please be advised that our church has made many requests to meet with your church leaders to discuss options regarding the purchase of 1601 Porter Rd. and the litigation involving this property and our church. To date all request for meetings with us have been denied. The Union Police was called by either Ken Matz or Michael Mietlicki which disrupted our Sunday Worship Service on Sunday, April 17, 2005, in order to have 2 cars removed from our property because access was acquired through the property at 1601 Porter Rd. If they wanted us to move the cars, why didn't Ken and Michael come and ask us themselves as fellow Christians? This event seems to have been orchestrated by someone to obtain a police report against our church. We would certainly have moved the cars without police intervention if requested by anyone from St. Joseph's. During this incident Ken said he would call us the next day to arrange a meeting between our church officials and yours. To date no communication has taken place or meetings have been scheduled. Much controversy has been made about a reluctant complaint made against St. Joseph's and Michael Mietlicki, in Union County Superior Court. We clearly informed Father Jan previously and Michael and Ken at the incident on April 17th, that we did not intend to go forward with this complaint. However, it was aggressively pursued by your present attorney. The main purpose of this letter is to inform all of you that your church, by coordination of your present attorney and coercion of your church leaders, appear to be joining forces with the racist government of Union Township, which will inevitably cause your church to needlessly be encompassed in the enclosed complaint being heard in the United States Federal Court beginning on May 10, 2005.

Please consider the following points of recent concern and clarification.

**(1)Violating township ordinances.**

****Please review the enclosed Federal Law that prohibits any form of government to use zoning laws to hinder religious institutions. Also, on 10/12/04 in Union Township Municipal Court, driveway construction and illegal parking complaints were dismissed as being without merit. This decision was confirmed in Roselle Park Municipal Court as legal and binding.

**(2) Stone left by Anco Environmental after oil tank excavation.**

****We never contracted Anco to leave any stone on our property. Leaving this stone was obviously more convenient and less expensive for Anco. In fact knowing this stone would probably cause a problem, we asked Anco to restore the property to grass. (See enclosed complaint against Anco in Union County Superior Court dated May 2004)

**(3) Parking on grass or stone.**

****According to our research and viewing of properties, there are many people throughout Union Township parking on their own property on grass and stone surfaces. Why should we have to adhere to different standards?

**(4) At present our church has no vehicular access to our church.** A barrier and an embarrassing "No Trespassing" sign was erected on Palm Sunday morning (of all days).
****That means no medically challenged, elderly or handicapped parishioners can attend our church. Neither can we receive moderate to heavy deliveries at our church. Also, we certainly can not have any funerals under these conditions. This action is contributing to the permanent closure of our church.
**(5) As demonstrated in the past, we have offered in writing to your church officials our intent and willingness to pay for <u>any and all court costs and attorney fees</u> concerning 1601 Andrew St. (And That Offer Still Stands)**
****The declining of this generous offer by your attorney, Lisa Fittipaldi is extremely, extremely suspicious. We are investigating the true nature of her relationship with township attorneys and officials. If it proves that there is an coordinated agenda, she will be personally included in the enclosed Federal Complaint. It appears that coached correspondence to our church has been written by Michael Mietlicki and then made conveniently available to Union Township attorney's by Ms. Fittipaldi. How else would one explain how the township mysteriously and suddenly came into position of these documents. If proven true this constitutes conspiracy against our church and will be prosecuted to the fullest extent of the law.

Also, please be advised that at a hearing in Union County Superior Court on April 29 (which I did not attend), I have been told that your attorney has stated on the court record that your church has never used the side entrance of the property at 1608 Porter Rd. or 1601 Andrew St. for access or any type of parking. I have applied for this transcript as this is obviously is false testimony and perjury. A neighbor has shared a photo that shows substantial side entrance parking & traffic during what appears to be a St. Joseph's funeral.
It is important to note that our church has never stated it did not want to obtain planning board approval or permits to construct a parking lot. Our position has always been for them to give us time to raise the funds to effectively begin the project. Ironically, if Union Township Officials were not relentlessly attacking us since we purchased the property in March of 2004, through the issuance of needless summonses, which has required frequent court appearances and substantial attorney fees, and thus has deterred many people from attending our church, we probably could have built 2 permanent parking lots by now.
We are sincerely appealing to all parishioners to encourage your church officials to not join hands with the racist officials of Union Township, to reconsider their choice of legal representation and to open the lines of communication with our church to discuss our respective options as Brother's and Sister's in Christ.

Sincerely Yours,

Rev. Ellis Smith Jr.

CC: Father Jan Kosc
Ken Matz
Michael Mietlicki
Rt. Rev. Casmir Grotnick

# Merger Board



***Saint Joseph's Parish and Holy Trinity Parish***
***Polish National Catholic Church***
*Michael R. Mietlicki*
*40 Jacobs Lane*
*Scotch Plains, NJ 07076*
*Office: 908-685-7076*
*Cell: 908-578-3153*
*Michael-Mietlicki@comcast.net*

**November 9, 2003**

**Rev. Ellis Smith Jr.**
**Love of Christ Church**
**115 Evergreen Place**
**P.O. Box 2363**
**East Orange, NJ 07019**

Dear Rev. Smith,

I am pleased to inform you that the members of Saint Joseph's Parish meeting in special session on November 9th reviewed and accepted your offer to purchase our church property.

We will now meet with our legal counsel to draw up the necessary contracts. A parish representative will be contacting you shortly to discuss the next steps in more detail. In the meantime if you have any questions please contact me or Father John.

We look forward to working with you to complete this property transfer as quickly as possible.

Best regards,

Michael R. Mietlicki
For the Merger Board

Cc: Rt. Rev. Casimir Grotnik
Very Rev. Wieslaw Pietruszka
Rev. Jan Kosc
Mr. Anthony Potkulski
Mr. Edward Kropaczek

Case 2:05-cv-02080-JLL-RJH Document 8-3 Filed 05/12/2005 Page 10 of 10

**LOVE OF CHRIST CHURCH**

RD.
07083
814

8, 2005

Ken Matz
St. Joseph's & Holy Trinity
Polish National Catholic Church

Dear Ken:

As per our conversation on Sunday, I am looking forward to you contacting us [illegible] a meeting to discuss the cordial nature of the enclosed order, the purchase of 1601 Por[illegible] the illegal summonses issued by the Township to Father Jan and St. Joseph's. I would lik[illegible] you that I will be out of town next week (4/25 - 4/28). Also, as I mentioned previously, we [illegible]oned the Federal Court in Newark for and emergent relief injunction against the Townshi[illegible] retaliation they have levied against your church to inevitably persecute our church. [illegible] not believe your church will be required to answer those summonses next week. Howev[illegible]lling to pay for and execute any and all litigation on behalf of 1601 Porter Rd. We are tru[illegible]r your attention to this matter.

In God's Service,

Rev. Ellis Smith Jr.