**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

July 6, 2005

NOT FOR PUBLICATION

**LETTER-OPINION & ORDER**

Rev. Ellis Smith, Jr.
1640 Andrew Street
Union, NJ 07083

Rosalyn Cary Charles
Cary Charles & Winston, LLC
14 South Orange Avenue
South Orange, NJ 07079

Harry A. Yospin
DiFrancesco, Kunzman, Coley, Yospin, Bernstein & Bateman, PC
15 Mountain Blvd.
Warren, NJ 07059

George C. Campion
Weiner Lesniak LLP
629 Parsippany Road
P.O. Box 438
Parsippany, NJ 07054

    Re: **Smith, et al. v. Township of Union, et al.**
       **Civil Action No.: 05-CV-2080 (JLL)**

Dear Counsel:

## Introduction

  This matter is before the Court on plaintiffs' application for a preliminary injunction. The Court has considered the submissions in support of and in opposition to this application, as well as the arguments advanced by the parties at the hearing conducted May 26, 2005. For the

reasons set forth below, this action is DISMISSED.

## Background

In March 2004, plaintiffs – the Love of Christ Church ("Church"), whose parishioners are predominantly black, and its Reverend, Ellis Smith, Jr. – purchased from defendant St. Joseph's Polish Catholic Church ("St. Joseph's") a plot of land upon which sits a church. Plaintiffs allege, and evidence suggests, that St. Joseph's agreed at that time to sell plaintiffs a plot of adjoining land as soon as St. Joseph's' pastor, who lived in a parsonage on the plot, was able to move out. The contract of sale, however, included no such arrangement.

Upon commencement of services at the newly purchased church, certain elderly, handicapped, and perhaps other of the Church's parishioners parked their cars on a section of the plot adjacent to a side entrance. Parking on this grassy section, which plaintiffs at some point covered with gravel, ostensibly eased entry into the church for these parishioners. There is no street access to this makeshift parking lot, however, so in order to park their cars outside the more desirable entrance, these parishioners, with at least tacit consent from St. Joseph's, crossed the parsonage property in their vehicles. It bears noting that the parsonage property has no driveway extending from the street to the makeshift parking lot on the adjoining church property. To the contrary, plaintiffs placed wooden planks on the curb, and the parishioners drove over these planks and across the parsonage lawn to plaintiffs' graveled lot.

A neighbor complained to defendant Union Township about this arrangement. The Township, at least partly in response, started issuing summonses to plaintiffs and parishioners for their use of the makeshift parking area, which use supposedly violates a municipal ordinance.[1] The Township also issued summonses to St. Joseph's for permitting use of its property as an improper driveway for entry onto the church lawn.

To this date, no party has applied for a zoning variance to use either plaintiffs' or St. Joseph's' property in a manner inconsistent with current zoning laws.

On April 20, 2005, plaintiffs filed this action for injunctive relief, along with an application for emergency relief under Local Civil Rule 65.1. Their Complaint alleges, inter alia, that the Township has, on account of their race, frustrated their ability to exercise freely their religion. The Court granted plaintiffs' motion for an order to show cause and ordered argument on the merits of the application for preliminary injunctive relief. (See Order of 4/21/05.) Shortly thereafter, St. Joseph's withdrew its support of – or its lack of opposition to – plaintiffs' position vis-a-vis the Township. As a result, plaintiffs amended their Complaint on May 17, 2005 to add St. Joseph's and certain associated individuals as defendants. These newly-added defendants, plaintiffs allege, have conspired with the Township and its employees to violate plaintiffs' civil

---

[1]These summonses, with some success, have been and continue to be challenged in municipal court.

rights.

The Court heard argument and testimony on May 26, 2005. Specifically, in addition to the numerous certifications, exhibits, and the like considered by the Court during the course of these proceedings, the Court on that date heard the testimony of live witnesses, all called by plaintiffs, including a Church parishioner, St. Joseph's' correspondence secretary, and Reverend Smith himself. Moreover, on June 20, 2005, the Court attempted to broker a settlement between the parties, but these discussions proved fruitless.

The Township defendants have moved to dismiss on ripeness grounds. The St. Joseph's defendants have moved to dismiss for failure to state a claim.

## Discussion

Every case in this Court must be "ripe" for adjudication. The so-called ripeness doctrine is "rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) (citing Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 733 n.7 (1997)). Its chief purpose "'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Id. (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)).

In the context of land use disputes, the Supreme Court has imposed specific ripeness requirements. Id. (citing Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985)). Particularly, a land dispute is not ripe until the aggrieved landowner "obtain[s] a final, definitive position as to how [he] could use the property from the entity charged with implementing the zoning regulations." Id. at 348. Hence, before a court may hear such a dispute, the landowner must submit "at least one meaningful application for a variance." Id. The reasons for this requirement are fourfold: (1) it "aids in the development of a full record;" (2) it enables the court to know exactly how a regulation will be applied to the land in question; (3) it may yield the landowner the relief he seeks, thereby avoiding judicial entanglement; and (4) it reinforces the principles of federalism, as these disputes are usually of a decidedly local character. Id.

The ripeness requirement is somewhat relaxed in cases where, as here, First Amendment claims are asserted. Peachlum v. City of York, 333 F.3d 429, 434 (3d Cir. 2003); Murphy, 402 F.3d at 350-51. Moreover, the instant action raises Equal Protection claims involving a suspect class, raising serious questions as to whether the ripeness requirement applies at all. See Taylor Inv., Ltd. v. Upper Darby Township, 983 F.2d 1285, 1294 (3d Cir. 1993) ("In these circumstances, where no suspect classification is alleged and no fundamental right infringed, we believe that a plaintiff's equal protection claim is not ripe under Williamson until the zoning authority has taken final action."); see also Kawaoka v. City of Arroyo Grande, 17 F.3d 1227 (9th Cir. 1994) (addressing merits of race-based land use claim while dismissing takings claim on

3

ripeness grounds).

Here, plaintiffs allege race-based interference with their First Amendment rights through arbitrary enforcement of zoning laws. Were this the extent of the record in this action, the Court would be inclined to dispense with the ripeness requirement altogether, see Forseth v. Village of Sussex, 199 F.3d 363, 370-71 (7th Cir. 2000), but the record here, after a full evidentiary hearing and numerous submissions of affidavits and the like, is quite developed, and that record reveals serious questions concerning this Court's jurisdiction. Specifically, while there is some circumstantial evidence of disparate treatment,[2] there is also evidence that, in the event plaintiffs applied for a variance, they would receive the relief they seek here, thereby exposing the non-existence of a bona fide equal protection claim and rendering federal entanglement in this dispute inappropriate.[3] See Murphy, 402 F.3d at 348 (listing possibility of obtaining relief through local zoning entity and principles of federalism as two reasons for the Williamson variance-application requirement). Indeed, the Township has offered plaintiffs at least two handicapped-parking spots adjacent to the church, and it has also agreed to waive the fees incident to a zoning variance application. These are hardly indicia of race-motivated animus.

In light of this record, the Court is not prepared to discard the ripeness requirement by virtue of the parishioners' race. Any further inquiry into whether the Township's actions have been race-motivated would be highly fact-intensive, requiring extensive discovery without the benefit of knowing what the Township's final, definitive position on the lot's use actually is. See Murphy, 402 F.3d at 348 (listing development of a full record and demonstration of how a regulation will be applied to a piece of land as two reasons for the Williamson variance-application requirement); cf. Peachlum, 333 F.3d at 435 ("[I]n cases involving fundamental rights, even the remotest threat of prosecution ... has supported a holding of ripeness where the

---

[2]The Court finds credible the testimony of plaintiffs' witnesses that vehicles had been parked on the makeshift parking lot on numerous occasions during the course of the past several decades. The Court also finds, however, that the Township was probably enforcing the zoning laws not because the Church's parishioners were black, but because the Township received complaints from at least one neighbor. There is no evidence that these complaints were themselves motivated by racial animus, and in any event that inquiry is largely irrelevant, as those complainants are not defendants, and it is not disputed that plaintiffs are in fact acting in violation of applicable zoning law.

[3]Moreover, with respect to the First Amendment claim, the actual injury at issue here is not readily apparent from the record. See Murphy, 402 F.3d at 351 (assessing the injury in First Amendment case to determine applicability of ripeness doctrine). It appears that there is plenty of parking on the surrounding streets, so it cannot be said that the Church's parishioners are being denied access to services. And the record reflects that the church building itself has no ramps and the like for disabled parishioners, which makes it impossible for these individuals to avoid stairs even if they were permitted to park by the side entrance. This action, therefore, appears to be one more of marginal inconvenience than of outright infringement of free exercise.

issues in the case were 'predominantly legal' and did not require additional factual development."). For these reasons, plaintiffs' claims, in the absence of a variance application, are not yet ripe for adjudication.

The Court's holding is reinforced by the Second Circuit's recent opinion in Murphy. There, the plaintiffs had been using their single-family home to hold afternoon prayer meetings for as many as sixty people. 402 F.3d at 345. Neighbors complained, and the local zoning commission investigated. Id. Finding the complaints substantiated, the commission sent plaintiffs an informal letter informing them that they were in violation of zoning regulations. Id. The plaintiffs immediately sued in federal court. Id. The commission then issued a formal cease-and-desist order, which plaintiffs did not appeal but instead challenged in an amended complaint. Id.

The Second Circuit vacated the district court's injunction, holding that the claims were not ripe for judicial intervention. The court reasoned that, had the plaintiffs appealed the cease-and-desist order and applied for a variance, "things may very well have been different." Id. at 352. The court further relied on the uncertainty of the ultimate use of the land permitted, the incompleteness of the factual record, and the desirability of avoiding myriad unnecessary constitutional determinations as additional reasons for its holding. Id. at 353-54.

Likewise, in the action sub judice, all of these concerns, as discussed above, are present. Consequently, plaintiffs' application for a preliminary injunction is DENIED and this action is DISMISSED for lack of ripeness.[4] The Court reiterates that this holding applies only to the unique factual circumstances of this case – that is, actual evidence on the record illuminates the underpinnings of the ripeness doctrine and consequent non-justiciability of plaintiffs' claims at present – and does not purport to apply rigidly the Williamson ripeness requirements to equal protection claims brought by a suspect class.

## Conclusion

For the reasons set forth above, this action is DISMISSED.

SO ORDERED.

/s/ Jose L. Linares
United States District Judge

---

[4]Because the Court has no jurisdiction over plaintiffs' claims against the Township, the St. Joseph's defendants must be dismissed as well, as plaintiffs' dispute with the latter is wholly local in nature. See 28 U.S.C. § 1367(a) (district courts have supplemental jurisdiction over non-federal claims only if they have original jurisdiction over at least one claim).